IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| David Bacchus, )<br><br>Plaintiff, )<br>)<br>vs. )<br>)<br>South Carolina Department of )<br>Corrections, et al., )<br>)<br>Defendants. )<br>_____ ) | Civil Action No. 6-10-2857-HMH-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

This matter is before the court on the defendants' motion for summary judgment (doc. 38) and the plaintiff's motion for entry of default (doc. 83). The plaintiff, a state prisoner who is proceeding *pro se*, filed this action pursuant to Title 42, United States Code, Section 1983, claiming that his constitutional rights have been violated.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

On February 23, 2011, the defendants filed a motion for summary judgment. By order filed February 24, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed

his response in opposition on March 22, 2011.  The defendants filed a reply on April 1, 2011, and the plaintiff filed a sur-reply on April 13, 2011.

## FACTS PRESENTED

The plaintiff is serving an 18-year sentence for voluntary manslaughter, grand larceny, failure to stop for an officer, and resisting arrest in the administrative segregation unit ("SMU") at Broad River Correctional Institution ("BRCI").  He was previously incarcerated at Lee Correctional Institution ("Lee"), where the use of force incident at issue in this case took place.

On May 19, 2009, the plaintiff and Lieutenant Cedric June ("Lt. June") got into an argument.  On that same date, the plaintiff completed request to staff member forms to Warden Padula and Associate Warden Bell asking that he and Lt. June be "separated." The plaintiff stated in the form that Lt. June made a crude comment to him and that he would "not accept this disrespect lightly."  The warden responded that because the plaintiff provided nothing to substantiate his request, he would not act upon it.  The associate warden responded that if the plaintiff had "specific information about specific threats from any employee [he] should request evaluation for PC."  On May 25, 2009, the plaintiff wrote a request to staff member form to Assistant Warden Brooks again requesting a separation because of "a conflict of interest" between himself and Lt. June.  The assistant warden responded on May 27, 2009, that he was forwarding a copy of the request to Associate Warden Bell and Major Dean for review (pl. resp. m.s.j. at 1, doc. 56-9 at pp. 2, 4).

According to the plaintiff, while he was in the shower on May 28, 2009, Lt. June yelled at him and made him get out of the shower (pl. resp. m.s.j. at 1-2).  On May 29, 2009, the plaintiff states that he confronted Lt. June about forcing him to get out of the shower.  The plaintiff claims he and Lt. June began yelling at each other, and Lt. June made the same crude comment to him again (*id.*).

2

On June 1, 2009, Lt. June was in the lower tier of the south wing of the Chesterfield unit at Lee calling the names of inmates to line up for spring packages (Cedric June aff. ¶ 2). Approximately 64 inmates were present and unrestrained. Several inmates had recently attacked and beaten a correctional officer who was patrolling the unit (*id.*). Suddenly, Lt. June felt an impact to the back of his head and then another (*id.* ¶ 3). Lt. June turned around to see the plaintiff standing behind him swinging a lock tied to a string. The plaintiff swung the lock at least two other times at Lt. June in an attempt to hit him, but Lt. June was able to fend him off (*id.* ¶ 4). The plaintiff admits in his response to the motion for summary judgment that he "came behind Lt. June and hit him in the back of the head with a lock tied to a string" (pl. resp. m.s.j. at 2).

Sergeant Jimmie Williams responded to help Lt. June and pulled out his chemical munitions cannister (Jimmie Williams aff. ¶ 4). The plaintiff swung the lock at Sgt. Williams and hit the cannister in Sgt. Williams' hand causing the cannister to explode (*id.* ¶ 5). Gas filled the air, blinding Sgt. Williams (*id.*). The plaintiff and Sgt. Williams went to the ground, and the plaintiff got up and ran to the upper tier of the unit (June aff. ¶¶ 5-6). The lock was tied to the plaintiff's hand, and he asked the inmates in the upper tier to give him another weapon (*id.* ¶ 6). Lt. June ran up the opposite side stairs and cut off the plaintiff's escape (*id.* ¶ 7). The plaintiff turned around and ran away from Lt. June (*id.*).

At this time, Lieutenant Thomas Commander ("Lt. Commander") arrived at the upper tier, and Major James Dean ("Major Dean") arrived at the lower tier (Thomas Commander aff. ¶ 3; James Dean aff. ¶ 3). Gas was in the air, and other inmates were present and unrestrained (Dean aff. ¶ 7). Lt. June and Lt. Commander approached the plaintiff (June aff. ¶ 7; Commander aff. ¶ 4). Major Dean stated in the incident report that he gave the plaintiff a directive to lie down, and he complied. Lt. June ran toward the plaintiff and fell on him (pl. resp. m.s.j., doc. 56-5 at p. 4; *see also* June aff. ¶ 7; Dean aff. ¶ 4; Commander aff. ¶ 4). Major Dean testified that the plaintiff did not comply until the

3

officers came close to him (Dean aff. ¶ 3).  Lt. Commander assisted Lt. June in subduing the plaintiff (*id.*).  Major Dean and Lt. Commander both stated in their incident reports that Lt. Commander pulled Lt. June off of the plaintiff (pl. resp. m.s.j., doc. 56-5 at pp. 4, 6). Major Dean and Lt. Commander noticed that blood was pouring from Lt. June's head, and Major Dean directed Lt. June to withdraw from the situation to receive medical assistance (Commander aff. ¶ 3; Dean aff. ¶ 5).  According to the officers' affidavits and incident reports, the plaintiff was then escorted downstairs and handcuffed (Commander aff. ¶ 6; Dean aff. ¶ 6; *see* pl. resp. m.s.j., doc. 56-5 at pp. 4, 6).

The plaintiff claims that he was on the floor of the upper tier being handcuffed when Lt. June dropped his knee on the plaintiff's face splitting his right eye brow and busting his bottom lip.  He further claims that Lt. June kicked him in the head causing his head to hit the wall and causing a deep laceration to the back of his head (pl. resp. m.s.j. at 3).  The plaintiff submitted the affidavits of two inmates who testified that, while the plaintiff was being restrained, Lt. June "dropped his knee" on the plaintiff's face or back area (doc. 56-2, Derrick McIlwain aff. ¶ 3; Phillip Spears aff. ¶ 4).  Neither inmate mentioned Lt. June kicking the plaintiff in the head as alleged by the plaintiff.  The inmates attest in their affidavits that Lt. Commander and Officer Simon pulled Lt. June off of the plaintiff (McIlwain aff. ¶ 3; Spears aff. ¶ 5).

Lt. June was taken to the emergency room at Tuomy Hospital and received eight stitches to the back of his head (June aff. ¶ 10).  The entire incident occurred over the course of two minutes (*id.* ¶ 14).  Lt. June, Lt. Commander, and Major Dean testified in their affidavits that the force used on the plaintiff was the minimal force necessary to quickly restore order, prevent inmate unrest, and protect the safety of the correctional officers and inmates present (June aff. ¶ 15; Commander aff. ¶ 8; Dean aff.  ¶ 7).

The plaintiff was escorted to medical.  According to Brian Lorimer, a Registered Nurse employed by the South Carolina Department of Corrections ("SCDC") at

4

Lee, the plaintiff's eyes were flushed with cold running water for approximately 15 minutes to clear out the chemical munitions. The plaintiff had a minor shallow laceration above his right eye, which Lorimer cleaned and treated with Dermabond. A band aid was also applied. Lorimer also noticed slight damage to the mucous membranes of the plaintiff's lower inner lip, but this did not require treatment. The plaintiff denied further injuries, and he ambulated out of medical in stable condition. Lorimer did not see the plaintiff in medical again (Lorimer aff. ¶¶ 1-4; def. m.s.j., ex. F, Medical Records, p. 5).

The plaintiff claims that Lorimer also applied Dermabond to a wound on the back of his head (pl. resp. m.s.j. at 2). However, Lorimer testified the plaintiff had no other injuries, and there is no mention of such a wound in the medical records (*see* Lorimer aff. ¶ 4; def. m.s.j., ex. F, Medical Records, p. 5).

From June 1, 2009, to February 2011, the plaintiff repeatedly requested sick call and was examined on numerous occasions. The plaintiff, although never providing the location of his headaches, complained of headaches that were diagnosed as tension headaches (def. m.s.j., ex. F, Medical Records, pp. 1, 8). The medical staff at BRCI suspected the plaintiff was malingering (*id.* at pp. 10, 15). On May 4, 2010, the plaintiff's skull was x-rayed and returned a finding of normal (*id.* at pp. 1, 16). While he initially told medical staff that the only head trauma he had suffered was during the use of force at issue here, the plaintiff told medical staff on January 5, 2010, that the indentation in the back of his head was caused during a fight several years earlier (*id.* at p. 12). Prior to the use of force, the plaintiff made repeated complaints of backaches caused by a football injury (*id.* at pp. 3-4). He also complained of blurry vision following the use of force, and he was prescribed eyeglasses, which he intentionally destroyed (*id.* at pp. 6-7, 11-12).

In opposition to the motion for summary judgment, the plaintiff submitted reports from Investigator Lloyd Greer, who investigated the incident. In one of those reports, dated June 11, 2009, Investigator Greer stated that he met with Lee County

5

Assistant Solicitors, and, after explaining the facts surrounding the incident between the plaintiff and Lt. June, the assistant solicitors agreed that the plaintiff should be charged with Assault and Battery of a High and Aggravated Nature and Assault on a Correctional Officer. They also agreed that Lt. June should be charged with Assault and Battery of a High and Aggravated Nature and Misconduct in Office (pl. resp. m.s.j., doc. 56-6 at p. 14). The plaintiff also submitted two request to staff member forms. In the first, dated February 22, 2010, the plaintiff asked for information about the incident. The Office of the Inspector General responded the next day, stating that, as the plaintiff was "well aware," in October 2009, the plaintiff had been convicted of assaulting Lt. June (*id.*, doc. 56-9 at p. 11). In the second, dated March 1, 2010, the plaintiff asked for the status of the charges against Lt. June. The Office of the Inspector General responded on March 4, 2010, that the judge dismissed the charges against Lt. June on October 28, 2009 (*id.*, doc. 56-9 at p. 12).

In his complaint, the plaintiff names 34 defendants and alleges excessive force, failure to protect, and deliberate medical indifference. He seeks compensatory damages of $100,000 against each defendant and punitive damages of $20,000 against each defendant.

***Motion for Entry of Default***

On May 19, 2011, the plaintiff filed a motion for entry of default (doc. 83), arguing the defendants "fail[ed] to fully disclose request for production of documents" (m. for entry of default at 1). The plaintiff claims the defendants have failed to comply with this court's March 18, 2011 order, which granted in part the plaintiff's motion to compel. In that order, this court ordered the defendants to produce certain incident reports and use of force reports relating to the incident at issue in this case. The defendants have complied with that order by providing plaintiff with the existing reports (*see* def. resp. to 3rd m. to compel, ex. A-C, doc. 73-1, 2, 3). Accordingly, the plaintiff's motion is meritless and should be denied.

6

*Motion for Summary Judgment*

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

7

entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### Excessive Force

Correctional officers must often use force to maintain order, and they must "balance the need to maintain or restore discipline through force against the risk of injury to inmates." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). To demonstrate that a use of force violated the Eighth Amendment, an inmate must establish that "a prison official applied force 'maliciously and sadistically for the very purpose of causing harm.'" *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In addition to satisfying the subjective component, an inmate must establish that a correctional officer's actions were "'objectively harmful enough' to offend 'contemporary standards of decency.'" *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998) (quoting *Hudson*, 503 U.S. at 8).

The following facts are undisputed:

1. The plaintiff hit Lt. June with a lock tied to a string twice and attempted to hit him at least two more times.

2. The plaintiff attacked a second correctional officer with the lock and string, knocking a chemical munitions cannister out of the officer's hands and causing the cannister to explode.

3. The plaintiff fled upstairs attempting to escape and continued to carry the lock and string.

4. Gas was in the air, and 64 inmates were present and unrestrained.

5. The plaintiff attempted to get other inmates to give him another weapon.

6. The plaintiff suffered a laceration above his eye that was immediately treated.

7. Several inmates had recently attacked a correctional officer in the same unit.

8

### *Subjective Component*

The Fourth Circuit Court of Appeals applies the following factors when analyzing whether a prison official used force in good faith and not maliciously or sadistically: (1) The need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, (4) any efforts made to temper the severity of a forceful response, and (5) the absence of serious injury. *Williams*, 77 F.3d at 762 (citing *Hudson*, 503 U.S. at 7). *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010) (noting that the extent of injury "'may suggest whether the use of force could plausibly have been thought necessary in a particular situation'" and thus is a factor to be considered in the Eighth Amendment inquiry (quoting *Hudson*, 503 U.S. at 7)). "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . , the case should not go to the jury." *Whitley*, 475 U.S. at 322.

Applying the foregoing factors, this court finds that the plaintiff cannot satisfy the subjective component of his claim:

### a. The need for application of force

The plaintiff struck two correctional officers with a weapon, fled the scene, and recruited other inmates to supply him with an additional weapon. Sixty-four unrestrained inmates were present, and gas was in the air. The use of force against the plaintiff served the legitimate reasonable purposes of quickly restoring order to prevent potential inmate unrest and protect the safety of the officers and inmates.

### b. The relationship between the need and the amount of force used

Viewing the evidence in a light most favorable to the plaintiff, as he was being restrained, Lt. June dropped his knee on the plaintiff's face. The plaintiff's own witnesses do not corroborate his claim that Lt. June kicked him in the back of the head, and there is no evidence of any injury to the back of the plaintiff's head. The force used on the plaintiff

9

was minimal compared to the harm he caused and the threat he posed.  Moreover, swift and decisive force was necessary to prevent unrest among the inmates present and unrestrained.  The entire incident took place over the course of two minutes.  The force used on the plaintiff was well within proportion to the need for force.

### c.  The threat reasonably perceived by prison officials

The plaintiff had a weapon tied to his arm and attempted to acquire another weapon from inmates in the unit.  The unit was the location of a previous attack on a correctional officer.  The plaintiff struck two correctional officers with his weapon.  Again, gas was in the air, and 64 inmates were present and unrestrained.  The plaintiff fled the scene and attempted to escape with a weapon.  A severe threat was reasonably perceived by the prison officials.

### d.  Efforts made to temper the severity of a forceful response

The plaintiff approached Lt. June from behind and repeatedly hit him on the back of the head with a weapon.  The plaintiff also attacked Sgt. Williams with the lock and string. He then fled carrying a weapon.  The evidence shows that whether Lt. June fell on the plaintiff in subduing him or dropped his knee on the plaintiff, he was immediately pulled off by the other officers.  The entire incident occurred over the course of two minutes.  The officers' use of force was tempered.  Moreover, the officers immediately escorted the plaintiff to medical for treatment of his injury.  This further establishes the attempt to limit any harm against the plaintiff.

### e. The absence of serious injury

The plaintiff suffered a minor laceration above his eye, which required no stitches and only a band aid, and a slight injury to his lower inner lip that did not require treatment. This slight injury demonstrates that the correctional officers used restraint in subduing the plaintiff and used a minimal amount of force.  While the plaintiff claims Lt. June kicked him in the back of the head, his own witnesses do not mention this, and the

medical records do not indicate that the plaintiff told the nurse that he had such an injury. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### Objective Component

The plaintiff also cannot satisfy the objective component of his claim. The inquiry under the objective component is:

> [W]hether the injury of which [the inmate] complains is significant enough, when viewed in its factual context, to amount to a violation of his right to be free of cruel and unusual punishment, a right which "draws the meaning from the evolving standards of decency that mark the progress of a maturing society."

*Stanley v. Hejirika*, 134 F.3d 629, 636 (4th Cir. 1998) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). "[W]hen prison security measures are taken in response to an uprising or prison disturbance, the courts cannot always expect a perfectly measured response." *Id.* at 634. "'The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable and hence unnecessary in the strict sense.'" *Id.* (quoting *Whitley*, 475 U.S. at 319).

In *Stanley*, the inmate had caused a prison disturbance and resisted correctional officers' efforts to place him in an isolation cell. *Id.* at 632-33. The Fourth Circuit Court of Appeals, viewing the force in context of the inmate's actions, held that even if it assumed a punch or kick occurred during the placement of the inmate in the isolation cell, it could not conclude in retrospect that the force used was "'unreasonable, and hence unnecessary in the strict sense.'" *Id.* at 636 (quoting *Whitley*, 475 U.S. at 319).

11

In this case, the plaintiff had a weapon tied to his arm and exhibited the intent to use it. Many unrestrained inmates were nearby, and the tension within the prison was understandably high. In the context of the plaintiff's actions, the officer's use of force was reasonable and an allegation that Lt. June dropped his knee on the plaintiff is insufficient to find the force was objectively unreasonable. As the plaintiff fails to satisfy either the objective or subjective components of his excessive force claim, summary judgment should be granted to the defendants.

### Medical Indifference

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v.*

*Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

The court has reviewed the submitted medical records as well as the plaintiff's request to staff member forms, sick call requests, and grievances (def. m.s.j., ex. F, Medical Records; pl. resp. m.s.j., doc. 56-9). While the plaintiff may be personally dissatisfied with the care he received while at Lee and BRCI, he is not constitutionally entitled to the treatment of his choice. The records show that the defendants were not indifferent to the plaintiff's medical needs and quickly responded to his many requests. *See Anderson v. Greenville County Detention Center*, C.A. No. 9:09-1994-JFA-BM, 2009 WL 2924025, at *2 (D.S.C. Sept. 11, 2009) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995))).

The plaintiff's injury was treated immediately following the use of force on June 1, 2009. His medical records demonstrate that he was examined numerous times since that date. Medical personnel ordered an x-ray of his skull and found no problem. Further, the plaintiff admitted that the injury to the back of his head was caused during a fight several years prior to 2010. Medical personnel prescribed to the plaintiff mild pain relievers to treat the subjective claims of head and back pain. He complained of his

eyesight, and medical personnel provided him eyeglasses, which the plaintiff promptly destroyed. The evidence demonstrates that the plaintiff received adequate care, and his numerous complaints were addressed. Based upon the foregoing, the medical indifference claim fails.

***Deliberate Indifference to Inmate Safety***

The plaintiff alleges that the defendants failed to provide for his reasonable safety and that this failure constituted cruel and unusual punishment violating the Eighth Amendment to the United States Constitution. Deliberate indifference to an inmate's safety needs is actionable under Section 1983. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (prison officials have duty to protect prisoners from violence "at the hands of other prisoners") (brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)). See also *Miltier*, 896 F.2d at 851-52 ("A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position."). The United States Supreme Court has noted:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk of inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. *See* Prosser and Keeton §§ 2, 34, pp. 6, 213-214; *see also* Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680; *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). But an official's failure to alleviate a significant risk that he should have

14

perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38.

Here, as argued by the defendants, the plaintiff initiated the use of force by striking Lt. June and Sgt. Williams and then fleeing.  While the plaintiff had previously submitted request to staff forms stating that he needed to be separated from Lt. June, the defendants could not have predicted that the plaintiff would attack the officers in this manner.  Accordingly, the claim fails.

### *Qualified Immunity*

Furthermore, as an additional ground for dismissal, the defendants in their individual capacities are entitled to qualified immunity as described in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) and its progeny, as their conduct did not violate any constitutional right of the plaintiff.  Further, in their official capacities, the defendants may not be sued under Section 1983 for damages, as an allegation against them in their official capacities with the SCDC is an action against the State, and thus is barred by the Eleventh Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 71 (1989).

### **CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 38) be granted and the plaintiff's motion for entry of default (doc. 83) be denied.

s/Kevin F. McDonald
United States Magistrate Judge

July 26, 2011
Greenville, South Carolina

15